## EASTERN DISTRICT, PHILADELPHIA.

# Wheeden *versus* The Camden and Amboy Railroad Company.

1. The word "citizen," in the Constitution of the United States, means a human being—a natural person, capable of acting, contracting, suing and being sued without legislative aid—a person of whom allegiance is predicable, and who may be guilty of treason.

2. A corporation is not, *per se,* a citizen within the meaning of the third article of the Constitution of the United States.

3. When a corporation sues or is sued, the governing officers, by whatever name called, are the substantial party ; and if they are citizens of the State which created the corporation, and the other party is a citizen of another State, the federal courts have jurisdiction, and the cause is removable under the Judiciary Act of 1789.

*Coram:* WOODWARD, J., sitting at Nisi Prius.

This was an action brought by James C. Wheeden in the Supreme Court of Pennsylvania against the Camden and Amboy Railroad and Transportation Company—a corporation created by the laws of the State of New Jersey, and located and doing business in said States. Some of the members of the corporation were citizens of Pennsylvania, and it had an office in said State.

Defendants filed their petition under the Act of 1789, setting forth that the plaintiff was a citizen of Pennsylvania, and that the defendant was a citizen of New Jersey, and moved the court to remove the record of this case into the Circuit Court of the United States for the Eastern District of Pennsylvania. An answer was filed by the plaintiff, and counter affidavits by the defendants. The facts very fully appear in the opinion of the court.

*St. George T. Campbell,* for the motion.

*Miller, G. M. Wharton,* and *Drayton, contra.*

*J. M. Read,* in reply.

[Wheeden v. The Camden and Amboy R. R. Co.]

The opinion was delivered January 7, 1856, by

WOODWARD, J.—The Constitution of the United States, (art. 3, sec. 2,) extends the judicial power of the Federal Union to various classes of cases, and, among others, to all cases in law and equity " *between citizens of different States.*" The 11th section of the Act of Congress of 1789, commonly called the Judiciary Act, vests original cognizance in the circuit courts, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, five hundred dollars, and where " *the suit is between a citizen of the State where the suit is brought and the citizen of another State;*" and the 12th section provides, that if a suit be commenced in a State court by a citizen of the State in which the suit is brought against a citizen of another State, and the matter in dispute exceeds five hundred dollars, exclusive of costs, to be made to appear to the satisfaction of the court, and the defendant shall, at the time of entering his appearance in such State court, file a petition for the removal of the cause for trial into the next circuit court, to be held in the district where the suit is pending, and offer good and sufficient surety for his appearance in said court, and entering special bail, if necessary, " it shall then be the duty of the State court to accept the surety, and proceed no further in the cause," but the same is to proceed in the Circuit Court of the United States, in the same manner as if it had been brought there by original process.

It will be observed that the legislative language, descriptive of the parties who may sue or remove into the Circuit Court, is a little more restricted than that employed in the Constitution, but if any difference of meaning be indicated by the difference in phraseology, it is unimportant in the case before me, for if this be a removable cause, it is because it is within the words of the legislature, and of course within those of the Constitution.

What, then, is the case ? James C. Wheeden brought suit in the Supreme Court of Pennsylvania against the Camden and Amboy Railroad and Transportation Company, for the recovery of damages claimed to exceed five hundred dollars, and which resulted, it is understood, from the late calamity, well known as the "Burlington disaster." The company, at the time of appearing, filed a petition, setting forth that they were a corporation solely created and established by laws of the State of New Jersey, and having their chief place of business within the State of New Jersey, and that the corporation was and is a citizen of said State, and that the plaintiff is a citizen of Pennsylvania. Security was tendered, and the removal of the cause into the Circuit Court was prayed for.

The plaintiff puts in an answer to the petition, and alleges that the company own property and transact a large part of their

[Wheeden *v.* The Camden and Amboy R. R. Co.]

business in the city of Philadelphia.  Several of the specifications in the plaintiff's answer are qualified, and some of them contradicted by counter affidavits on the part of the company; but I do not consider the facts alleged in the answer, whether disputed, qualified, or admitted, as of much moment to the present inquiry, for the defendant being a corporation created by the Legislature of New Jersey, and having no vitality or existence save such as is derived from that source, cannot be, whatever their business transactions in this State, a *citizen* of Pennsylvania, in any sense of either the Constitution or the Judiciary Act. " That invisible, intangible and artificial being, that mere legal entity, a corporation aggregate," if capable of becoming a citizen of a State for any purpose, must be made so by the legislative power of the State.  It is impossible that New Jersey should make a citizen of Pennsylvania, even of a natural person, much less of an artificial.  And if the legislative faculty of that State is incompetent for this purpose, a corporation existing solely by her will, cannot make itself a citizen of Pennsylvania.  No amount of business carried on, or property held here, can naturalize such a corporation.  Its rights amongst us are permissive merely, resting entirely in the absence of prohibitory legislation.  That we regard every corporation " not holding its charter under the laws of this Commonwealth" as foreign, may be seen by reference to the 3d section of our Act of Assembly of 21st March, 1849, (Brightly's Purdon, 169,) which provides that suit may be brought against " any such foreign corporation," by process served upon " any officer, agent, or engineer of such corporation, either personally or by copy, or by leaving a certified copy at the office, depôt, or usual place of business of said corporation."  It was under this act of assembly the present defendant was sued, as a foreign corporation.  The answer does not allege any legislative recognition by Pennsylvania of this corporation defendant, and, therefore, if all that is alleged were admitted, it would not be a step in the process of proving a Pennsylvania citizenship for it.  We subject it to suit through its agents, when they are found here, and we seize in execution of our judgments any property it may have within our borders; but in no sense or degree can it ever become a local institution, except by express legislative recognition.

But further.  If the facts alleged in the answer are insufficient to prove a Pennsylvania citizenship, so also do they fail to disprove this corporation a citizen of New Jersey ; and, to borrow the language of Chief Justice Taney, in *Bank of Augusta v. Earle,* 13 Peters, 591, it must dwell in the place of its creation, and cannot migrate into another sovereignty.  But as natural persons, through the intervention of agents, are continually making contracts in countries in which they do not reside, and where they are not personally present when the contract is made, so may this

artificial person, by its agents, make contracts within the scope of its limited powers, in a sovereignty in which it does not reside, provided such contracts are permitted to be made by the laws of the place.

And as the natural person does not transfer his citizenship from one sovereignty to another by such dealings, neither does the artificial. Nor do such dealings constitute, for either the natural person or the corporation, a double citizenship, one in the place of the domicil, and another where business is carried on through agencies.

It is obviously proper, therefore, for me to lay out of view, in the further consideration of this case, all the business arrangements and transactions which the answer charges the company with maintaining in Pennsylvania. A foreign corporation doing business in this State, becomes not thereby a citizen of Pennsylvania, and loses not any citizenship it may have in the State of its creation.

But still the question remains, is this company a citizen of New Jersey? Incorporated solely by that State, doing business therein, its principal officers resident there, and its railroad, the great instrument of all its operations, lying wholly in that State, this company is a citizen of New Jersey, in so far as an artificial being can become such. If any company can be, in one sense of the Constitution, a citizen of a sovereign State, the Camden and Amboy Railroad Company is a citizen of New Jersey, and the plaintiff being confessedly a citizen of Pennsylvania, the jurisdiction of the circuit court would follow as a necessary consequence. The suit might have been brought in that court, in the first instance, and is removable there at the instance of the defendant.

But can a corporation be a citizen? For general purposes it is impossible. The rights and privileges guaranteed to citizens in the Federal Constitution, are inconsistent with the nature, properties and purposes of corporations. Take, for instance, that provision of the 4th article, " that the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States." If corporations created by State authority were held to be within the provision, their rights and powers would no longer be measured by the grants of their charters, but by the constitutional rights of an American freeman; they would overrun State lines, seize upon political power, and ultimately devour one another.

The framers of the Federal Constitution were well acquainted with corporations. They existed in England and several of the States, and whilst no power to create them was expressly delegated to Congress, no restraint was imposed on the power of the States to multiply them indefinitely. They were left out of the

[Wheeden *v.* The Camden and Amboy R. R. Co.]

federative system altogether, and that, doubtless, by design, and on good reasons, and not by accident. So was the word "citizen" well understood, as it is now understood, to mean a human being —a natural person, capable of acting, contracting, suing and being sued without legislative aids—a person of whom allegiance is predicable, and who may be guilty of treason. In all these points, and many others, corporations are distinguishable from citizens, and no body of men, probably, were ever assembled on earth, who understood the distinction better, or were more capable of expressing their thoughts accurately, than the framers of the Constitution of the United States. When they used the word " citizen " to define the character of the parties who might resort to the judicial power of the Union, did they then mean corporations? The received rules of interpretation would require us to understand the same word in the same sense throughout the instrument, if not controlled in certain places by the context, and if the word citizen, when used in the 4th article, did not include corporations, how, it might be asked, can it be construed in the 3d article to embrace them? There is nothing in the context of either article to impart a shade of meaning to the word, different from the common understanding of its sense. It would seem to me to mean the same thing in both articles, and in both to mean natural and not artificial persons.

For these reasons, and others which it is not worth while to take time to state, I should be very apt, if the questions were new, to reach the conclusions so repeatedly stated and ably defended by the *dissentiente* members of the Supreme Court of the United States, where cases involving the question have been before that tribunal; but, sitting here as a judge in a State court, I am not to follow dissenting opinions, nor, on a constitutional question, my own ideas of the meaning of the organic law, but am to take the instrument in the sense in which it is received by the majority of the Supreme Court of the United States.

Among the judicial tribunals of the country, if not in other departments and places, that court is the supreme and final arbiter of questions under the federal Constitution. The respect entertained for the members of that bench, makes that duty of following them, on a constitutional question, easy and pleasant, which the theory of the government makes imperative.

In the case of the *Bank of the United States* v. *Deveaux*, 5 Cranch, 61, decided in 1809, the record contained an averment that the plaintiffs were citizens of the State of Pennsylvania, and that the defendants were citizens of Georgia. The defendants pleaded to the jurisdiction, that the body corporate was not competent to sue in the Circuit Court of the United States. The Supreme Court overruled the plea, and sustained the jurisdiction, not on the ground that corporations were citizens, for this, Chief

Justice Marshall most emphatically denied, but on the ground that the members of the corporation, who were natural persons, and the substantial parties on the record, were citizens of Pennsylvania, and the court felt itself authorized to look to the character of the individuals composing the corporation, for the purpose of sustaining a jurisdiction which had been often exercised without question.

In *Sullivan* v. *The Fulton Steamship Company*, Wheaton, 450, the defendants were described as a corporate body, incorporated by the legislature of New York, and it was held that the court had no jurisdiction.

*The Bank of Vicksburg* v. *Slocomb*, 14 Peters, 60. Here a Mississippi corporation was sued by a citizen of Louisiana, and the successful plea to the jurisdiction, was that two of the corporators were citizens of Louisiana.

That plea, admitted by the demurrer, was held sufficient to oust the jurisdiction. This case interprets that of the *Bank* v. *Deveaux*, where Marshall, C. J., ruled, that the court would look beyond the charter to the *members* of the corporation, but he did not define what was meant by members,—whether corporators merely, or official and governing members. Taking the two cases together, the doctrine is, that if all the corporators are citizens of the State from which the charter of incorporation is obtained, the corporation may be sued in the Circuit Court by a citizen of another State ; but if any of them are citizens of the State to which the plaintiff belongs, jurisdiction is denied. This case, in 14 Peters, also rules what has been admitted in subsequent cases, that the Act of Congress of 28th February, 1839, wrought no change in the jurisdiction of the Circuit Courts as respects the character of parties.

The doctrine deduced from these two cases, *Deveaux* and *Slocomb*, is in exact accordance with that laid down by Chancellor Kent, as the result of all the authorities, 1 Com. 378 ; and by Judge Story, in the *Bank of Cumberland* v. *Willis & Sumner*, 472. In this case, a bank incorporated by the State of Maine, sued a customer, who was a citizen of Massachusetts, and was turned out of the Circuit Court, because a citizen of Boston was the owner of ten shares of the capital stock of the bank.

See also 1 Peters, 288 ; 3 Dallas, 382 ; 4 Dallas, 708 ; and 3 Crom. 267.

I come now to the case of the *Louisville Railroad Company* v. *Letrom*, 2 Howard, 497. Letrom, a citizen of New York, sued, in the Circuit Court of the United States for the district of South Carolina, the Louisville, Cincinnati, and Charleston Railroad Company, a corporation created by, and transacting business in the State of South Carolina. The jurisdiction was objected to on several grounds.

[Wheeden *v.* The Camden and Amboy R. R. Co.]

1. That all the members of said corporation were not citizens of South Carolina, but that two of them were citizens of North Carolina.

2. That South Carolina herself, was a member of said corporation.

3. That the Bank of Charleston, another South Carolina corporation, was a member of the corporation sued, and that two citizens of New York were members of the said banking corporation.

4. That the Charleston Insurance and Trust Company, was also a member of the corporation sued, and that three members of said trust company were citizens of New York.

These objections were all overruled, the cause tried, and judgment rendered by the Circuit Court for the plaintiff, and the judgment affirmed in the Supreme Court, after arguments by counsel, which are remarkable for their fulness and ability.

Mr. Justice Wayne delivered the opinion of the Supreme Court, and after reviewing and limiting the effect of prior decisions, indicated the ground on which the decision in this case was altogether rested, by the following language : "It is, that a corporation created by and doing business in a particular State, is to be deemed, to all intents and purposes, as a person, although an artificial person, an inhabitant of the same State, for the purposes of its incorporation, capable of being treated as a citizen of that State as much as a natural person. Like a citizen, it makes contracts, and though, in regard to what it may do in some particulars, it differs from a natural person, and in this especially, the manner in which it can sue, and be sued, it is substantially within the meaning of the law, a citizen of the State which created it, and where its business is done, for all the purposes of suing and being sued."

Here, it will be observed, there was no looking beyond the charter to fix the citizenship of the members. Incorporation by, and doing business in a particular State, constitutes citizenship "for all the purposes of suing and being sued." These words seem to be added by way of qualification, but when it is considered that the Constitution and Act of Congress use the word "citizen" in connection with the judicial powers of the courts, only for the purpose of defining who may sue and be sued, it is apparent that the words of the learned judge are no qualification of the constitutional and legislative rule.

The next case is *Marshall* v. *The Baltimore and Ohio Railroad Company*, 16 Howard, 314 ; a suit by a citizen of Virginia against a corporation, which was described as a "body corporate by an act of the general assembly of Maryland," and without any averment as to the place of business, or residence of officers or corporators. The jurisdiction of the Circuit Court was affirmed

in the Supreme Court, by an opinion of Grier, Justice, who cited
with approbation, *Letrom's case*, and the opinion of Mr. Justice
Catron, in *Rundle* v. *The Delaware and Raritan Canal Company*, 14 Peters, 80.

The point of distinction between *Letrom's case* and that of
*Marshall* is, that in the former it was averred of record, that the
corporation was doing business in the State which created it; in
the latter it was not.  In the former the language of the judge
implies that the corporation, in its artificial and legal character,
is to be regarded as a citizen for purposes of suit; in the latter,
that the officers, who are " curators," or trustees of the corporation, are the substantial party, and that their residence and citizenship determines the jurisdiction.  In this respect, the opinion
in *Marshall's case*, is coincident with what Catron, Justice, said,
in *Rundle* v. *The Canal Company*.

" My opinion is, and long has been," said the learned judge,
" that the mayor and aldermen of a city corporation, or the president and directors of a bank, or of a railroad company, (and of
other similar corporations,) are the true parties that sue and are
sued, as trustees and representatives of the constantly changing
stockholders.  If the president and directors are citizens of the
State where the corporation was created, and the other party to
the suit is a citizen of a different State, or a citizen or subject of
a foreign government, then the courts of the United States can
exercise jurisdiction under the third article of the Constitution.
In this sense, I understood *Letrom's case*, and assented to it when
the decision was made; and so it is understood now."

These views were repeated by Judge Catron, in a dissenting
opinion, in *Marshall's case*, and his dissent in that case was
rested on the ground that there was no averment on record of the
citizenship of the president and directors.  According to Mr.
Justice Grier, speaking for the majority, this is to be inferred
from an averment of the act of incorporation.

If *Letrom's case* is to be received as Judge Catron understood
it, the result of all the cases, the earlier taken in connection with
the modern, may be stated thus:

1. A corporation is not, *per se*, a citizen, within the meaning
of the third article of the Constitution.

2. But when it sues or is sued, the governing officers, by whatever name called, are the substantial party, and if they are citizens of the State which created the corporation, and the other
party is a citizen of another State, the federal courts have jurisdiction.

This is according to Judge Marshall's principle, of looking beyond the charter to the citizenship of members of the corporation, but it defines the members to be looked to differently from
what was done in *The Vicksburg Bank* v. *Slocumb*.  It is no

longer the stockholders or corporators in general, but the president and directors, to whose citizenship the court will look.

This rapid review of the cases is sufficient to show that, if the question before me had arisen whilst the doctrine obtained in the Supreme Court, which was expounded in the *Vicksburg Bank case*, the fact alleged here, and not controverted, that some of the stockholders of the Camden and Amboy Railroad Company are residents in, and citizens of Pennsylvania, would be decisive against the jurisdiction of the Circuit Court. That doctrine passed into the text of Chancellor Kent and other writers, and many cases were ruled upon it. It was, nevertheless, subject to serious objections, as may be seen by the criticisms of counsel and judges in subsequent cases, and particularly in *Letrom's case*. Whether the doctrine that was submitted for it will not be found more objectionable, and the court be brought to the broad ground of declaring, either that corporations, as such, are citizens, within the meaning of the Constitution, or that they are not citizens, and cannot be parties to litigation in the federal courts, are subjects not fit for present speculation, and which must await the developments of judicial history.

My present duty is to apply the law as I find it settled now. And, as I understand it, the fact that some of the stockholders of the company reside in the same State as the plaintiff, is a circumstance of no importance whatever. Though they may be affected by the judgment in the case, they are not to be considered parties to the record. The president and directors are the substantial parties sued, under the shadow of the corporate name, and I am to presume them citizens of New Jersey, because it is shown that the company was incorporated by that State, and is doing business therein. Nor is that presumption rebutted by their holding property and transacting business through agencies in Pennsylvania. The jurisdiction of the Circuit Court results, therefore, out of the citizenship of these governing members of the corporation.

Under the act of Congress, it is to be made to appear, to the satisfaction of this court, that the matter in dispute exceeds five hundred dollars, exclusive of costs. An affidavit to that effect is appended to the petition of the company, which, though objected to, I deem sufficient, and I also consider the surety offered " good and sufficient."

It is, therefore, ordered, that the prayer of the petitioner be granted, that the security be accepted, and that this court will proceed no further in the cause.

Let a like order be entered in *The Case of Thomas Finlay*, and against the same defendants.