**SEFULUTASI SULUAI as beneficiary of SIPU SULUAI,**
**Plaintiff,**

**v.**

**NATIONAL WESTERN LIFE INSURANCE COMPANY,**
**Defendant.**

High Court of American Samoa
Trial Division

CA No. 134-00

July 8, 2002

Before KRUSE, Chief Justice, LOGOAI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, Paul F. Miller
 For Defendant, Roy J.D. Hall, Jr.

### ORDER DENYING PLAINTIFF'S MOTION
### FOR NEW TRIAL/RECONSIDERATION

On May 10, 2002, this Court filed its decision and order in this matter entering judgment in favor the defendant National Western Life Insurance Company ("NWL") and against plaintiff Sefulutasi Suluai ("Suluai"). Suluai filed her motion for new trial and/or reconsideration on May 21, 2002.

The motion is not grounded on anything of substantive import going to the merits. Rather, the motion generally asserts reversible error (1) in allowing defense counsel the opportunity to talk to a witness, Afa Roberts ("Roberts"), in the midst of his being examined by Suluai's counsel, in derogation of Suluai's rights to a fair trial and to due process; and (2) that as a result, the appearance of partiality of the panel of judges

was thereby reasonably put into question. Consequently, Suluai believes that recusal is warranted.

## A. Fair Trial and Due Process

 Suluai asserts that the Court's action in allowing defense counsel to consult with Roberts, "in private," somehow deprived her of her "rights to a fair trial and to due process." (*See* Pl.'s Mot. for Recons. or New Trial and Mem. of Supp. Points and Authorities 1). Without articulating the argument, or providing any elaboration whatsoever, Suluai is simply content to direct us to "U.S. CONST. Amends. V & VI; AMERICAN SAMOA CONST. Art. sec. 2; 75 AM. JUR. 2D *Trial* § 191 (1991)," and to "Executive Order 11222, signed by President Johnson, circa 1968." (*See* Pl.'s Mot. for Recons. or New Trial and Mem. of Supp. Points and Authorities 2). In essence, the Court is left to guess as to what the argument might be. As we have said countless times in these matters:

> What is essential to a motion for a new trial is that it . . . fully apprises the court of the asserted errors in the judgment . . . so that the trial court may consider for itself whether any such errors occurred and make appropriate corrections thereby obviating obvious appeals.

*Am. Samoa Gov't v. Falefatu*, 17 A.S.R.2d 114, 119-20 (Trial Div. 1990). Thus, the Appellate Division has said:

> All motions [for new trial] must "state with particularity the grounds therefor." T.C.R.C.P. Rule 7. This is particularly important in the case of a motion for new trial, whose purpose is to avoid unnecessary appeals by alerting the trial court to possible errors or omissions in its opinion.

*Kim v. Star-Kist*, 8 A.S.R. 146, 150 (App. Div. 1988). Additionally,

> [i]f no timely motion for reconsideration or new trial conforming to the "particularity" requirement of T.C.R.C.P. 7(b)(1) is filed within the statutory ten-day deadline, then the Appellate Division lacks jurisdiction to entertain an appeal.

*Taulaga v. Patea*, 17 A.S.R.2d 34, 35 (App. Div. 1990). Moreover, this Court recently had cause to sternly warn Suluai's counsel, Mr. Miller, in another matter that "this Court, [is] . . . 'not paid . . . to do legal research that should be done by the attorneys, nor to guess at or construct the legal theory upon which a losing party might oppose our decision.'" *Progressive Ins. Co., Ltd. v. Southern Star Int'l*, 6 A.S.R.3d 112, 129 (Trial Div. 2002) (quoting *G.M. Meredith and Assocs. v. Blue Pac.*

*Mgm't Corp.*, 28 A.S.R.2d 1, 2 (Trial Div. 1995)).

■ The requirements of procedural due process are not fixed but vary with circumstances and the particular requirements of the case, minimally demanding notice and an opportunity to be heard. *Ferstle v. Am. Samoa Gov't*, 7 A.S.R.2d 26, 49 (Trial Div. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981); *Mathews v. Eldridge*, 424 U.S. 319 (1976)). As the motion is not clear on the asserted ground of "fair trial" and "due process," and as we are not inclined to guess or construct a legal theory for movant, the motion will be denied on this ground.

B. Appearance of Partiality and Recusal

As Suluai's second ground—the appearance of partiality claim—this is even more nebulous than the first and appears to be nothing more than a normative submission. The Court, in allowing defense counsel the opportunity to consult with his client, interrupting his examination by Suluai's counsel, was not unmindful of its duty to maintain the appearance of impartiality.[1] Quite the contrary, the Court was in fact motivated in its action by its very cognizance of that duty.

The factual backdrop to the Court's course of action is as follows: Suluai is a local resident, while NWL is an off-island corporate entity with headquarters in Texas selling certain classes of insurance in the Territory.[2] Roberts, who was simply characterized in Plaintiff's memorandum of points and authorities as "a material witness," also happens to be NWL's general agent in American Samoa. Roberts, on behalf of NWL, actually dealt with Suluai and her late husband culminating in NWL's issuance of a certain policy of life insurance that became the subject of proceedings before the Court. While Roberts was on the stand under examination by counsel Miller on direct, in the manner of a hostile witness with leading questions, counsel sought to impeach NWL by asking Roberts whether he recalled a conversation with him whereby Roberts had in effect admitted to counsel knowledge of the insured's diabetic condition at the time of latter's application for insurance. At that point in the examination, defense counsel Hall

---

[1] *See* H.C.R. 103, incorporating Canons of Judicial Ethics, Canon 3(C)(1); *In re Matai Title Faumuina*, 26 A.S.R.2d 1, 5-7 (App. Div. 1994).

[2] There is no federal district court in the United States Territory of American Samoa. In every other jurisdiction under the American flag, the defendant would have access to a federal district court under its diversity jurisdiction. 28 U.S.C. § 1332. The customary rationale given for diversity jurisdiction in the federal courts is the fear of parochial bias against a citizen from out of state. *See, e.g., United States v. Deveaux*, 5 Cranch 61, 87, 3 L.Ed. 38 (1809).

strongly objected to the question on grounds of inappropriate contact by Counsel Miller with his client.[3] Mr. Hall expressed surprise and concern at the possibility of confidential communication between he and Roberts being delved into by counsel Miller.

The Court thereupon, in its informed discretion, decided to take ameliorative action as best as the circumstances allowed, without needlessly having to delay trial by getting bogged down in a separate and collateral hearing, by taking a short recess in order to afford counsel Hall the opportunity to immediately ascertain from Roberts the nature and extent of any contact with Suluai's counsel outside of Mr. Hall's knowledge.

The Court was very much concerned about a fair trial—that the defense be not unfairly comprised by an inappropriate contact by opposing counsel. As it turned out, counsel Miller had indeed contacted Roberts a week before trial, but the Court opted to leave the collateral issue of professional misconduct for another day.[4] After the recess, Mr. Miller was allowed to have his question answered without further objection from defense counsel.

■ It goes without saying that "fairness" here is a two-way street, in

---

[3] A.B.A. Model Rule of Professional Conduct (1983) 4.4, adopted by H.C.R. 104, reads:

> [A] lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer . . . unless the lawyer has the consent of the other lawyer.

[4] Counsel Miller attempted to diffuse his predicament by subsequently stating on the record that the contact with Roberts that he was referencing had in actuality taken place in December 1999, a month before he filed his client's complaint. Roberts, on the other hand, testified that he could not recollect having such contact with Miller back in December 1999, as it was some time ago, but he definitely remembered his being contacted by counsel Miller "last week."

Astonishingly, Miller also submitted that witness Roberts was not a client of counsel Hall's. Counsel Miller would do well to revisit or appraise himself of A.B.A. Model Rule of Professional Conduct (1983), Rule 4.4, Comment ("In the case of an organization, the Rule prohibits communications by a lawyer for one party concerning the matter in representation with . . . any person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil . . . liability."). Miller's whole purpose in asking Roberts about their contact was to get Roberts to admit knowledge as to the policyholder's pre-existing medical condition prior to issuance of the life insurance policy at issue.

demand by *all* parties. The intervening ado would not have arisen in the first place, had Suluai's counsel paid closer attention to appropriate rules governing professional conduct, while taking advantage of pre-trial discovery measures available in this jurisdiction to properly speak with Roberts. Under the circumstances, Suluai, as well as NWL, each had their day in Court. The motion for recusal on the grounds of appearance of partiality is utterly without merit.

For reasons given, Suluai's motion for new trial/reconsideration is, therefore, denied.

It is so ordered.