

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-1997

# Dresser Ind Inc v. Underwriters Lloyds

Precedential or Non-Precedential:

Docket 96-1044

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Dresser Ind Inc v. Underwriters Lloyds" (1997). *1997 Decisions.* Paper 33.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/33

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 96-1044

_____

DRESSER INDUSTRIES, INC.; DRESSER CANADA, INC.,

Appellants,

vs.

UNDERWRITERS AT LLOYD'S OF LONDON, AND CERTAIN LONDON
MARKET COMPANIES; BISHOPGATE INSURANCE
COMPANY, LTD.; BISHOPGATE INSURANCE P.L.C.;
BRITISH LAW INSURANCE COMPANY, LTD.; CORNHILL
INSURANCE, P.L.C.; DAI-TOKYO INSURANCE
COMPANY (U.K.) LIMITED; ENGLISH & SCOTTISH
MARITIME & GENERAL INSURANCE COMPANY LTD.;
EXCESS INSURANCE COMPANY, LIMITED; HANSA
MARINE INSURANCE COMPANY (U.K.) LTD.; THE
INDEMNITY MARINE ASSURANCE COMPANY, LTD.;
INSURANCE COMPANY OF NORTH AMERICA (U.K.)
LIMITED; ICAROM P.L.C. (FORMERLY KNOWN AS THE
INSURANCE CORPORATION OF IRELAND LTD.); IRON
TRADES MUTUAL INSURANCE COMPANY, LTD.; LONDON
& HULL MARITIME INSURANCE COMPANY, LTD.;
MINSTER INSURANCE COMPANY, LTD.; THE NATIONAL
INSURANCE COMPANY OF NEW ZEALAND, LIMITED;
NEW HAMPSHIRE INSURANCE COMPANY; THE NIPPON
FIRE & MARINE INSURANCE COMPANY (UK) LIMITED;
OCEAN MARINE INSURANCE COMPANY, LTD.; PEARL
ASSURANCE PUBLIC LIMITED COMPANY; PHOENIX
ASSURANCE PUBLIC LIMITED COMPANY; POLARIS
ASSURANCE; PROVINCIAL INSURANCE PUBLIC
LIMITED COMPANY; PRUDENTIAL ASSURANCE COMPANY
LIMITED; SKANDIA U.K. INSURANCE P.L.C.;
SPHERE DRAKE INSURANCE PUBLIC LIMITED COMPANY
(FOR ITSELF AND AS SUCCESSOR TO SPHERE
INSURANCE COMPANY, LIMITED AND THE DRAKE
INSURANCE COMPANY, LIMITED); SUMITOMO MARINE
& FIRE INSURANCE COMPANY, LIMITED;
SWITZERLAND GENERAL INSURANCE COMPANY
(LONDON), LTD.; TAISHO MARINE AND FIRE
INSURANCE COMPANY, LTD.; THE THREADNEEDLE
INSURANCE COMPANY LIMITED; THE TOKIO MARINE &
FIRE INSURANCE COMPANY, LIMITED; VESTA (UK)
INSURANCE COMPANY, LTD.; THE YASUDA FIRE &
MARINE INSURANCE COMPANY (UK), LTD.; YASUDA

FIRE & MARINE INSURANCE COMPANY, LTD.; THE
YORKSHIRE INSURANCE COMPANY LIMITED

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 95-cv-04578)

_____

ARGUED AUGUST 6, 1996

BEFORE:  NYGAARD, LEWIS and McKEE, Circuit Judges.

(Filed February 6, 1997)

_____

Mary M. O'Day
Donald E. Seymour
John K. Baillie
Michael G. Zanic (ARGUED)
Kirkpatrick & Lockhart
1500 Oliver Building
Pittsburgh, PA  15222

        Attorneys for Appellants


Edward R. Dunham, Jr.
Miller, Dunham & Doering
1515 Market Street
13th Floor
Philadelphia, PA  19102

Martin R. Baach
James P. Davenport (ARGUED)
Nussbaum & Wald
One Thomas Circle, N.W.
Suite 200
Washington, DC  20005

        Attorneys for Appellees

_____

OPINION OF THE COURT

_____

2

LEWIS, Circuit Judge.

The principal question we are asked to decide in this appeal is whether federal courts have jurisdiction to entertain a suit between diverse citizens when, in addition to those citizens, aliens appear as both plaintiffs and defendants. We conclude they do, pursuant to 28 U.S.C. § 1332(a)(3), and will reverse the district court's decision to the contrary.

I.

Dresser Industries, Inc. ("Dresser"), a publicly held company incorporated in the State of Delaware with its principal place of business in Texas, and its subsidiary, Dresser Canada, Inc. ("Dresser Canada"), a corporation organized under Canadian law with its principal place of business in Ontario, Canada brought this action in the United States District Court for the Eastern District of Pennsylvania against the London Market Insurers for insurance coverage. Dresser alleged that the district court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(3). The London Market Insurers are comprised of underwriting syndicates at Lloyd's of London and companies participating in the London insurance market. One of the Insurers, New Hampshire Insurance Company, is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in the State of New York. The remaining London Market Insurers are aliens.

The underlying dispute involves seven insurance policies that provide for $150,000,000 in excess liability

3

coverage. The policies in question were not issued by a single insurer. Each policy was "subscribed to" by a number of entities with each assuming a set percentage of the risk (and receiving a set percentage of the premium). The percentages ranged from approximately 0.03% to 5.5%. In addition, under the terms of the policies each of the insuring entities was to be severally liable for the particular percentage of the risk that it assumed. New Hampshire Insurance had a 0.564% share of one of the policies at issue, which represented $282,000 in potential liability.

The London Market Insurers moved to dismiss the action for lack of subject matter jurisdiction, arguing that the presence of an alien as one of the plaintiffs and aliens as several of the defendants destroyed complete diversity. The district court agreed and granted the motion to dismiss. Relying upon dicta in two opinions of this Circuit interpreting 28 U.S.C. § 1332(a)(2), the court concluded:

> Under the rule of complete diversity, there is no federal subject matter jurisdiction over claims between the alien plaintiff and the alien defendants. Moreover, the reference in § 1332(a)(3) to aliens as "additional parties" does not apply to the instant action. The dispute is between Dresser and Dresser Canada and a lengthy list of insurers only one of which is a citizen, and whose exposure is limited to 0.564% of one of the three policies at issue. The alien insurers in this case cannot be considered additional parties.

Dresser Industries, Inc. & Dresser Canada, Inc. v. Underwriters at Lloyd's, London, No. 95-4578, slip op. at 4 (E.D. Pa. Dec. 22, 1995) (interpreting Field v. Volkswagenwerk AG, 626 F.2d 293 (3d Cir. 1980) and Singh v. Daimler-Benz AG, 9 F.3d 303 (3d Cir.

4

1993) as requiring complete diversity among all parties).  This appeal followed.

## II.

The district court's jurisdiction was predicated upon 28 U.S.C. § 1332(a)(3).  We have jurisdiction over the appeal from the final order of the district court pursuant to 28 U.S.C. § 1291.  Our review of the district court's decision to dismiss for lack of subject matter jurisdiction is plenary.  Singh v. Daimler-Benz AG, 9 F.3d 303, 305 (3d Cir. 1993).

## III.

### A.

Section 1332(a) provides in pertinent part that:
The district courts shall have original jurisdiction of
        all civil actions where the matter in
        controversy exceeds the sum or value of
        $50,000, exclusive of interests and costs,
        and is between --

(1)        citizens of different States;

(2)        citizens of a State and citizens or subjects
             of a foreign state;

(3)        citizens of different States and in which
             citizens or subjects of a foreign state
             are additional parties . . . .

28 U.S.C. § 1332(a).  To determine whether the district court had jurisdiction over this matter, we must interpret section 1332(a)(3), which grants jurisdiction in cases between citizens of different states in which aliens are "additional parties." Toward that end, we begin with the plain language of the statute.  See Commissioner v. Engle, 464 U.S. 206, 214 (1984); Health

5

Maintenance Org. of New Jersey, Inc. v. Whitman, 72 F.3d 1123, 1128 (3d Cir. 1995).

The language of section 1332(a)(3) grants federal jurisdiction when aliens are additional parties. The statute makes no distinction based upon which side of the controversy -- plaintiff, defendant, or both -- the aliens appear. Although the statute plainly requires that the dispute be between citizens of different states, it includes the phrase "additional parties" without any such limitation. Dresser and the London Market Insurers disagree over how this language, or lack thereof, should be interpreted.

Dresser contends that the words "additional parties," which are unaccompanied by any limiting language, unequivocally vest federal courts with jurisdiction over disputes in which aliens appear on both sides of the controversy. In other words, Dresser suggests that we need look no further than the language of the statute to answer the jurisdictional question.

London Market Insurers maintains, however, that the statute as written is ambiguous. They contend that the statute's failure to limit the phrase "additional parties" cannot be plainly interpreted to allow aliens on both sides of a controversy. In support of this view, London Market Insurers offers two hypothetical constructions of the statute. They claim that, had the statute contained language to qualify "additional parties," such as: (1) "on either side of the controversy but not on both sides"; or (2) "on either or both sides of the controversy," then the statute would be unambiguous, but the

words "additional parties" standing alone render the statute as currently written subject to two interpretations. Accordingly, they suggest, we must look to the statute's legislative history. We disagree. Because we find that the language of § 1332(a)(3) is plain, we need not consider the legislative history.[1]

1. Nevertheless, assuming arguendo that the legislative history is relevant to our analysis, we disagree with London Market Insurers' contention that a review of section 1332(a)(3)'s legislative history confirms that Congress intended this section to allow aliens on one side of the controversy only. At best, the legislative history is incomplete and does little to illuminate the statute. See James W. Moore, Moore's Judicial Code: Commentary 64 n.3 (1949). Although we agree with London Market Insurers that the Reviser's Notes to the statute indicate a specific congressional intention to allow for suits by a citizen against a diverse citizen and an alien, the Notes do not explicitly disallow suits between diverse citizens and aliens on both sides of the controversy. Moreover, other parts of the legislative history indicate that Congress was motivated by a desire to provide diverse citizens with a federal forum despite the presence of alien parties. K&H Business Consultants Ltd. v. Cheltonian, Ltd., 567 F. Supp. 420, 422-23 (D.N.J. 1983) (noting that the legislative history of § 1332(a)(3) indicates that it was enacted to provide a federal forum for suits among diverse citizens in which aliens were also parties). (For an interesting discussion of this point, see Nancy M. Berkley, Note, Federal Jurisdiction Over Suits Between Diverse United States Citizens With Aliens Joined to Both Sides of the Controversy Under 28 U.S.C. § 1332(a)(3), 38 Rutgers L. Rev. 71, 94 (1985) [hereinafter Federal Jurisdiction] (noting that the purpose of § 1332(a)(3) was to provide a federal forum for diverse United States citizens irrespective of their involvement with alien parties)). We believe that allowing a case to proceed in federal court even though aliens are present on both sides of the controversy is consistent with this intent. As one commentator put it: "[I]t seems clear that the statute allows joinder of aliens on both sides of a controversy in which there is an underlying dispute between citizens of different American states." 1 James W. Moore, Moore's Federal Practice ¶ 0.75[1.-2-4], at 800.44 (2d ed. 1996); see also 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3604, at 390 (1984) ("[T]he language of Section 1332(a)(3) is broad enough to allow aliens to be additional parties on both sides of the dispute."); Federal Jurisdiction, supra at 87-89 ("[B]y not specifying where the `additional' foreign parties are located within the suit, [§ 1332(a)(3)] permits a suit with aliens on both sides of the controversy . . . .").

Our holding is consistent with the circuits that have squarely addressed this issue and have uniformly concluded that jurisdiction exists when diverse citizens are joined with aliens even if they appear on both sides of the dispute.  See Goar v. Compania Peruana de Vapores, 688 F.2d 417, 420 n.6 (5th Cir. 1982); Allendale Mutual Ins. Co. v. Bull Data Sys., Inc., 10 F.3d 425, 428 (7th Cir. 1993); Transure, Inc. v. Marsh & McLennan, Inc., 766 F.2d 1297, 1299 (9th Cir. 1985); see also Bank of New York v. Bank of America, 861 F. Supp. 225, 228-229 (S.D.N.Y. 1994); Timco Eng'g, Inc. v. Rex & Co., Inc., 603 F. Supp. 925, 929-30 (E.D. Pa. 1985); K&H Business Consultants, 567 F. Supp. at 422-24.  But see Jet Traders Inv. Corp. v. Tekair, Ltd., 89 F.R.D. 560, 566 (D. Del. 1981).  As the Seventh Circuit noted, when citizens of states are on both sides of the litigation and are completely diverse, the presence of aliens on one or both sides of the controversy "fits section 1332(a)(3) to a t." Allendale, 10 F.3d at 428.

In dismissing this case for lack of jurisdiction, the district court concluded that the "complete diversity" requirement announced in Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806), precludes such a result.  We disagree.  In Strawbridge, the Supreme Court concluded that the precursor to 28 U.S.C. § 1332(a)(1) required that "each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts."  Id.  As the Supreme Court later noted, however, the requirement of complete diversity is derived from "the words of the act of Congress," and not the

8

Constitution.  State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 531 (1967).  Article III of the Constitution requires only minimal diversity.  Id.; Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 492 n.18 (1983).

Again, the plain language of 28 U.S.C. § 1332(a)(3) grants federal courts jurisdiction over controversies between diverse citizens joined with aliens.  Strawbridge's complete diversity requirement is, therefore, inapplicable.  As such, section 1332(a)(3) can best be understood as a congressional abrogation of the complete diversity rule.  1 Moore's Federal Practice ¶ 0.75[1.-2-4], at 800.44.  First, in addition to the plain language of the statute, this conclusion is supported by the fact that section 1332(a)(3) was added in the 1948 revision and codification of the Judicial Code, Title 28.  While the general diversity and alienage jurisdiction provisions had existed previously, section 1332(a)(3) was new.  As Strawbridge was decided long before Congress created this new provision, we must assume that Congress was well aware of the complete diversity requirement when it adopted section 1332(a)(3).

Second, the language used by section 1332(a)(3) differs from the language used in both section 1332(a)(1) and section 1332(a)(2).  1 Moore's Federal Practice ¶ 0.75[1.-2-4], at 800.44 ("The language of the additional provision for aliens mirrors the language of neither the diversity provision in § 1332(a)(1) nor the general alienage provision in § 1332(a)(2).").  Taken together, because Congress was well aware of the judicial interpretation of the diversity statute requiring complete

9

diversity, specifically used language that differs from the sections in which complete diversity had been applied, and used language which encompasses situations such as this, we must conclude that "complete diversity" of alien parties is not required under section 1332(a)(3).

Likewise, the cases in which courts have stated that complete diversity is required among aliens when interpreting section 1332(a)(2) are simply inapplicable here. See, e.g., Singh, 9 F.3d at 305 ("Other circuits have also construed the diversity statute to apply the complete diversity requirement to aliens."). See also Field v. Volkswagenwerk AG, 626 F.2d 293, 296 (3d Cir. 1980) ("[The complete diversity] requirement pertains to suits between aliens as well as to suits between citizens."); Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp., 506 F.2d 757, 758 (5th Cir. 1975) ("There is no indication -- legislative or judicial -- that a deviation from the rule applied in ordinary diversity cases would or ought obtain in a suit brought by an alien."); Eze v. Yellow Cab Co. of Alexandria, Va., Inc., 782 F.2d 1064, 1065 (D.C. Cir. 1986) ("A diversity suit in line with the Strawbridge rule, may not be maintained in federal court by an alien against a citizen of a state and a citizen of some other foreign country."). These cases all addressed whether jurisdiction exists in suits between aliens on one side of the controversy and aliens and citizens on the other. Applying the complete diversity rule under these circumstances makes sense for two reasons. First, the language of section 1332(a)(2) parallels the language used in section 1332(a)(1). As

10

such, applying the complete diversity requirement to that section represents a judicial attempt to interpret similar provisions in a similar manner. Second, section 1332(a)(2) only grants jurisdiction in cases between aliens and citizens. Cases between aliens on one side and aliens and citizens on the other, therefore, do not fit the jurisdictional pigeonhole.[2] Consequently, while a conclusion that the presence of aliens on both sides of the controversy defeats jurisdiction may be sound under section 1332(a)(2) as discussed above, such a conclusion is inconsistent with the plain language of section 1332(a)(3).

Finally, our conclusion that the presence of aliens on both sides of the controversy does not defeat federal jurisdiction under section 1332(a)(3) is consistent with the policy considerations that form the foundation for diversity and alienage jurisdiction. As one commentator has noted, "[i]t is the generally accepted view that diversity jurisdiction was established to provide access to a competent and impartial tribunal, free from local prejudice or influence . . . ." 1 Moore's Federal Practice ¶ 0.71[3.-1], at 709. Whether this prejudice or influence does in fact exist is not the question.

As Chief Justice Marshall observed:
However true the fact may be, that the tribunals of the states will administer justice as impartially as those of the nation, to parties of every description, it is not less true that the Constitution itself either entertains apprehensions on this subject, or views with such indulgence the possible fears and

---

2.    They also do not fit the pigeonhole created by section 1332(a)(3) because section 1332(a)(3) requires citizens to be present on both sides of the controversy.

11

> apprehensions of suitors, that it has
> established national tribunals for the
> decision of controversies between aliens and
> a citizen, or between citizens of different
> states.

Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 87 (1809).

In addition to fears of prejudice and bias, alienage jurisdiction is also based upon significant foreign policy concerns, which are exclusively within the province of the federal government.  As Alexander Hamilton explained:

> As the denial or perversion of justice by the sentences
> of courts, as well as in any other manner, is
> with reason classed among the just causes of
> war, it will follow that the federal
> judiciary ought to have cognizance of all
> causes in which the citizens of other
> countries are concerned.  This is not less
> essential to the preservation of the public
> faith, than to the security of the public
> tranquility.

The Federalist No. 80, at 536 (Alexander Hamilton) (Jacob E. Cooke ed., 1961).  Alienage jurisdiction, therefore, reflects a national concern over our relations with foreign governments and how they may be affected by the resolution of controversies involving their citizens.

Given the justification for diversity jurisdiction, there is a reasonable basis for the complete diversity rule.  If diversity jurisdiction exists because of a fear that the state tribunal would be prejudiced towards the out-of-state plaintiff or defendant, that concern is understandably allayed when that party is joined with a citizen from the forum state.  Indeed, when members from the forum state are present on both sides of

the controversy, it becomes more difficult to imagine that a state tribunal would favor one side based upon biases in favor of its own citizens. Bank of New York v. Bank of America, 861 F. Supp. 225, 229 (S.D.N.Y. 1994).

The same cannot be said, however, for applying the complete diversity rule to cases involving aliens. The mere presence of aliens on both sides of the controversy does nothing to allay concerns that the in-state party will receive more favorable treatment. While the bias towards aliens may be somewhat abated due to the presence of aliens on both sides of a case, the bias in favor of an in-state resident is not.

> Consider a case brought in New York state court where a citizen of New York and a citizen of Lithuania sue a Texan and a co-defendant. If the co-defendant is a New Yorker, the Texan's fear of bias will be allayed -- for in order to penalize the Texan the judge will have to harm one of his or her neighbors. On the other hand, if the co-defendant is a Lithuanian, the nervous Texan will be little comforted -- he or she has no reason to think that the judge will be any less willing to penalize a Texan and a Lithuanian than to penalize a Texan alone. For diversity purposes, an alien is an alien is an alien.

Id. at 229. More important, the international relations concerns remain. Indeed, the presence of aliens on both sides of the controversy heightens those federal concerns.

Thus, while the need for diversity jurisdiction has been questioned, see 1 Moore's Federal Practice ¶ 0.71[3.-2], at 713-19, the need for alienage jurisdiction has not. In fact, while legislation passed by the House of Representatives in 1978 would have abolished diversity jurisdiction, it left the alienage

jurisdiction sections, 28 U.S.C. § 1332(a)(2) and (3), intact. Id. at 800.31 n.7. Given the globalization of the United States economy, and the fact that citizens of the United States are becoming increasingly involved in international transactions, the need for impartial national tribunals remains unchanged.

B.

The London Market Insurers alternatively argue, and the district court agreed, that even if section 1332(a)(3) grants jurisdiction when aliens are present on both sides of a case, they cannot be considered "additional parties." The thrust of their argument is that because New Hampshire Insurance is only responsible for 0.564% of a single policy, the alien defendants are the principal parties. As such, the main suit is between Dresser and the alien defendants -- not New Hampshire Insurance, which serves merely as "window dressing." In effect, the London Market Insurers argue that section 1332(a)(3) requires us to weigh the relevant interests at stake. We disagree.

In support of this argument, the London Market Insurers rely upon L'Europeenne de Banque v. La Republica de Venezuela, 700 F. Supp. 114, 126 (S.D.N.Y. 1988). In that case, the district court held, without explanation, that under section 1332(a)(3) the United States citizens must be the "principal adverse parties." We are unconvinced by this conclusion and can find no authority to support it. The authority upon which the district court relied in turn rely only upon cases construing section 1332(a)(2). As discussed earlier, however, section 1332(a)(2) and section 1332(a)(3) differ in both language

14

and form.  Because the statute's language does not demand such a weighing requirement and because the London Market Insurers cannot offer any reasoned authority to support its interpretation, we refuse to engraft such a requirement onto the statute.

Under the plain language of the statute, we conclude that so long as there is a legitimate dispute between the citizens involved, jurisdiction exists under 28 U.S.C. § 1332(a)(3).  Bank of New York, 861 F. Supp. at 229; 1 Moore's Federal Practice ¶ 0.75[1.-2-5], at 800.47 ("[W]e stress that § 1332(a)(3) requires a legitimate dispute between citizens of different states to which the aliens are joined. . . . [T]he United States citizens [cannot be] merely window dressing for the principal dispute between aliens.").  The use of the term "additional" does not reference the level of involvement of the parties or the interests at stake.  Rather, it merely indicates that the jurisdictional hook upon which the case hangs is the existence of a legitimate controversy between diverse citizens, and unless that requirement is satisfied, jurisdiction will not exist.  As there is no dispute that the controversy between Dresser and New Hampshire Insurance is legitimate, we conclude that section 1332(a)(3) is satisfied.

IV.

For the foregoing reasons, the decision of the district court will be reversed, and the case will be remanded for further consideration.

_____

15

TO THE CLERK:

   Please file the foregoing opinion.


_____
Circuit Judge