Certiorari granted, February 28, 2005
Reversed and Remanded by Supreme Court, December 30, 2005

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHRISTOPHER ROCHE; JUANITA ROCHE,
*Plaintiffs-Appellants,*

v.

LINCOLN PROPERTY COMPANY; SWIB
INVESTMENT COMPANY,
*Defendants-Appellees,*

and

INVESCO INSTITUTIONAL,
*Defendant.*

No. 03-2064

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-02-1390-A)

Argued: May 5, 2004

Decided: June 30, 2004

Before WIDENER and GREGORY, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Reversed in part, vacated in part, and remanded by published opinion.
Judge Gregory wrote the opinion in which Judge Widener and Senior
Judge Beam joined.

---

## COUNSEL

**ARGUED:** Jerry M. Phillips, PHILLIPS, BECKWITH & HALL, Fairfax, Virginia, for Appellants. Connie Nora Bertram, VENABLE, L.L.P., Washington, D.C., for Lincoln Property Company; Richard Alan Dean, TUCKER, ELLIS & WEST, L.L.P., for SWIB Investment Company.

## OPINION

GREGORY, Circuit Judge:

Plaintiffs discovered evidence of toxic mold in their Fairfax County, Virginia apartment. They notified the property management office in Virginia and an inspection was ordered, mold was found, and abatement was required. During the mold remediation process Plaintiffs were relocated and their personal belongings were left in the care of the property management firm and the mold treatment firm. After treatment had been completed, Plaintiffs determined that certain of their valuables had been misplaced or stolen. They also learned from their treating physician that the mold had caused and exacerbated certain medical conditions. Plaintiffs brought suit in state court alleging breach of implied warranty of habitability, negligence, conversion and violations of Virginia's landlord-tenant act. Defendants removed the matter to federal court relying on diversity of citizenship. In support of removal, Defendants contended that the Texas parent corporation named in the state complaint created diversity of citizenship. Plaintiffs contended that there was not complete diversity because the property was managed by a Virginia subsidiary of the Texas parent. The district court denied Plaintiff's motion to remand for lack of diversity jurisdiction and granted summary judgment for the defendants. Plaintiffs now appeal the jurisdictional issues and summary judgment. We conclude that Defendants failed to carry their burden of proof with respect to their allegedly diverse citizenship. The judgment of the district court is therefore reversed as to jurisdiction, the remainder is vacated, and this case is remanded with instructions to remand to state court pursuant to 28 U.S.C. § 1447(c).

I.

On August 22, 2002, Plaintiffs Christopher and Juanita Roche (the "Roches" or "Plaintiffs") filed a Motion for Judgment against Lincoln Property Company ("Lincoln"), the State of Wisconsin Investment Board ("SWIB"), and Invesco Institutional ("Invesco") in the Virginia Circuit Court for Fairfax County, claiming personal injury and property damage sustained as a result of their exposure to toxic molds at the Westfield apartments. The Motion for Judgment named as defendants: "Lincoln Property Company t/a Lincoln Property Company ECW, Inc.," "INVESCO Institutional (N/A Inc.) Institutional Division of AMVESCAP a/k/a Invesco Realty Advisors," and "SWIB Investment Company State of Wisconsin Investment Board Lincoln Property Company." On September 17, 2003, Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441, on the basis of diversity of citizenship. Defendants then filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which was granted with leave for Plaintiffs to file an amended complaint. Plaintiffs amended their complaint and a jury trial was scheduled for May 3, 2002.

On April 22, 2003, Plaintiffs filed a Motion to Remand challenging diversity with respect to Lincoln. The motion was later expanded to include an additional claim of lack of subject matter jurisdiction on the basis that defendant SWIB was an arm of the State of Wisconsin and, therefore, not a citizen for diversity purposes. On May 2, 2003, the Plaintiffs filed a Rule 60(b) motion for relief from an order or judgment that is void for lack of jurisdiction.

On July 11, 2003, the district court denied Plaintiffs' motions to remand and for relief. On August 21, 2003, Plaintiffs filed their Notice of Appeal. On September 3, 2003, the district court denied Plaintiffs' motion for reconsideration.

II.

We review a denial of a motion to remand to state court *de novo*. *See Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999) (citing *Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan*, 111 U.S. 379, 384 (1884); *Tillman v. Resolution Trust Corp.*, 37 F.3d 1032,

1034 (4th Cir. 1994) (reviewing *de novo* denial of motion to dismiss for lack of subject matter jurisdiction); *see also Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (reviewing *de novo* denial of motion to remand)).

Federal courts have jurisdiction over controversies between "Citizens of different States" by virtue of 28 U.S.C. § 1332(a)(1) and U.S. Const., Art. III, § 2. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980).[1] Early in its history, the Supreme Court "established that the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be ***real and substantial parties*** to the controversy." *Id.* at 460-61 (quotations and citations omitted) (emphasis added). "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of ***real parties to the controversy***." *Id.* (citations omitted) (emphasis added).

The early cases held that only "persons" could be real parties to the controversy. Artificial or "invisible" legal creatures were not citizens of any State. *Id.* (citing *Bank of United States v. Deveaux*, 5 Cranch 61, 86-87, 91, 3 L.Ed. 38 (1809)).[2] Corporations suing in diversity,

---

[1]In *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806), the Supreme Court concluded that the precursor to 28 U.S.C. § 1332(a)(1) required that "each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts." *Id.* As the Supreme Court later noted, however, the requirement of complete diversity is derived from "the words of the act of Congress," and not the Constitution. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967). Article III of the Constitution requires only minimal diversity. *Id.*; *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 492 n. 18 (1983). However, it is axiomatic that the jurisdiction of the inferior courts—meaning the court of appeals and the district court—is determined by Congress. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57-60, 67 (1982) (plurality opinion) (Brennan, J.); *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1855); *see also Yang v. INS*, 109 F.3d 1185, 1197 (7th Cir. 1997) (Easterbrook, J.) ("The power to establish the inferior federal courts under Article III § 1 permits Congress to determine their jurisdiction."). Thus, we must exercise our jurisdiction in a manner that is strictly consistent with the plain language of the removal statute and congressional intent.

[2]The *Navarro* Court noted:

　Although overruled in *Louisville, C., & C. R. Co. v. Letson*, 2

however, have long been "deemed" citizens in modern jurisprudence. *See id.*[3] The "real and substantial party in interest standard," however, applies nonetheless. *Id.* Nearly all federal circuit courts have applied the "real party in interest standard" when determining whether true diversity of citizenship exists. *See e.g.*, *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752-53 (5th Cir. 1996) (applying real party in interest standard on review of motion to remand for lack of diversity); *Rockwell Int'l Credit Corp. v. U.S. Aircraft Ins. Group*, 823 F.2d 302 (9th Cir. 1987) (same), *overruled on other grounds by Partington v. Gedan*, 923 F.2d 686 (9th Cir. 1991); *Hughes-Bechtol, Inc. v. West Virginia Bd. of Regents*, 737 F.2d 540, 543-44 (6th Cir. 1984) (same); *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981) (same and noting that real party in interest is to be determined by "essential nature and effect of the proceeding").

Moreover, this Court has also applied the "real and substantial party in interest" standard when determining the propriety of exercising diversity jurisdiction. *See, e.g.*, *Koehler v. Dodwell*, 152 F.3d 304, 308 (4th Cir. 1998) (citing *Navarro*, 446 U.S. at 460-61 *and Ross v. Bernhard*, 396 U.S. 531, 538 (1970) (observing that the corporation, not the shareholder, is the real party in interest in a shareholder's

---

How. 497, 11 L.Ed. 353 (1844), *Deveaux* was resurrected by *Marshall v. Baltimore & Ohio R. Co.*, 16 How. 314, 14 L.Ed. 953 (1854). *Marshall* held that an artificial entity cannot be a citizen, but that the persons who "act under [corporate] faculties . . . and use [the] corporate name" are presumed to reside in the State of incorporation. *Id.*, at 328; *see St. Louis & S. F. R. Co. v. James*, 161 U.S. 545, 562 (1896). This view endured until 1958, when Congress amended the diversity statute to provide explicitly that "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Act of July 25, 1958, § 2, 72 Stat. 415 (codified at 28 U.S.C. § 1332(c)).

*Navarro*, 446 U.S. at 461 n.7.

[3]Under 28 U.S.C. § 1332(c) a corporation is deemed a citizen of its state of incorporation and of the state where it has its principal place of business.

derivative suit)); *see also* authorities cited in note 4, *infra*, (applying real party in interest standard to determine whether assignments were collusive to obtain or destroy diversity jurisdiction). And, it is firmly settled that a corporate parent and its subsidiaries may not manipulate federal diversity jurisdiction by litigating cases in the name of the other where the real party in interest is not diverse. *See Simpson v. Alaska State Comm'n for Human Rights*, 608 F.2d 1171, 1174 (9th Cir. 1979) ("We acknowledge that assignments of Causes of action between parents and subsidiaries are presumptively ineffective to create diversity jurisdiction.") (citing *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir. 1976) *and Green & White Constr. Co. v. Cormat Constr. Co.*, 361 F. Supp. 125, 127-28 (N.D. Ill. 1973)).[4]

Thus, in diversity cases, the general rule is that the citizenship of the real parties in interest is determinative for purposes of diversity jurisdiction. The citizenship rule testing diversity in terms of the real party in interest is grounded in notions of federalism. It is based upon the principle that a primarily local controversy should be tried in the appropriate state forum and that nominal or formal parties, who do not have a significant interest in the outcome of the litigation, should

---

[4]*See also, e.g.*, *Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 642, 646 (1st Cir. 1995) (merger of corporation into another corporate shell ineffective to create diversity jurisdiction); *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 859, 861-62 (2d Cir. 1995) (twenty-nine air carriers "real and substantial parties" because collection agency was "mere conduit for a remedy owing to others"); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, N.A.*, 20 F.3d 987, 991, 993 (9th Cir. 1994) (assignment by wholly-owned corporate subsidiary of its rights to parent corporation ineffective to create diversity jurisdiction); *Yokeno v. Mafnas*, 973 F.2d 803, 809-11 (9th Cir. 1992) (for real party in interest determination, assignment between corporation and director presumptively collusive and on remand could only be overcome with proof of legitimate business reason and consideration of several other factors); *J.F. Pritchard & Co. v. Dow Chem. of Canada, Ltd.*, 331 F. Supp. 1215, 1220, 1222 (W.D. Mo. 1971) (whether assignment by wholly owned corporate subsidiary, who was real party in interest, of its rights to parent corporation was collusive presented "very close question of fact and law"; claim dismissed on *forum non conveniens* ground), *aff'd*, 462 F.2d 998 (8th Cir. 1972).

not be able to use the federal courts. *See* C. Wright & A. Miller, 6A Federal Practice & Procedure Civ. 2d § 1556, at 419-22 (West 2004). Diversity of citizenship, therefore, is determined not by reference to the formal or nominal parties but, rather, there must be complete diversity between the real and substantial parties in interest. *See* 28 U.S.C. § 1332(a); *see also Nolan v. Boeing Co.*, 919 F.2d 1058, 1063 (5th Cir. 1990) (observing that removal jurisdiction is "based on the citizenship of the real parties in interest rather than their appointed representatives" or nominal parties). *But cf. Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 252 (5th Cir. 1973) ("The citizenship of one who has an interest in the lawsuit but who has not been made a party to the lawsuit by plaintiff cannot be used by plaintiff on a motion to remand to defeat diversity jurisdiction.").[5]

## III.

Congress has resolved that, "[i]f at any time before final judgment it appears that the district court lacked subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). And, it is well-settled that courts strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Dixon v. Coburg Dairy*, ___ F.3d ___, Slip. Op. at 6 (4th Cir. 2004) (*en banc*) ("We are obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated. Therefore, '[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'") (citations omitted). Likewise, it is equally well-settled that the parties' charac-

---

[5]The Court of Appeals for the Fifth Circuit relied upon *Provident Tradesmens Bank & Trust Co., Adm'r v. Patterson, Adm'r*, 390 U.S. 102 (1968) and *Saint Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283 (1938). Both of those cases dealt with the joinder (or failure to join) an insurance company who had, at best, a tangential interest in the pending claim. Applying Fed. R. Civ. P. 19, the Supreme Court concluded in *Provident* that the citizenship of the insurer was not to be considered for diversity purposes because, under Rule 19, it was not a necessary and indispensable party—the insurer was only obligated to pay the claim up to policy limits and its absence did not affect the substantial rights of the parties. In this case, however, the Roches contend that Lincoln's Virginia entity is the real and substantial party in interest, without whom they cannot be made whole. And, Lincoln has been made a party to the lawsuit.

terization of themselves or their claims is not determinative for federal jurisdiction purposes. *Id.* at 140.[6]

The Roches moved for remand arguing that the district court lacked subject matter jurisdiction insofar as Defendant Lincoln is not a Texas corporation, but rather is not a corporation at all and, instead, is a partnership with a partner who is a Virginia resident. J.A. at 1973.[7] According to the district court, the Roches based their motion for remand on the following uncontroverted[8] evidence:

(1)    the deposition of Fred E. Chaney, Lincoln's Rule 30(b)(6) designee, who allegedly stated that ***Lincoln was a partnership and not a company***;

(2)    the deposition of John LeBeau, vice president of the Mid-Atlantic Regional Division of Lincoln, who identified ***Jeff Franzen as a Senior Vice President, and "partner," in Lincoln Property Company***;

(3)    Lincoln's corporate website identifying ***Jeff Fransen as a "partner"***;

(4)    certificates from the Virginia State Corporation Commission certifying that Lincoln Property Company is neither authorized nor registered to conduct business in Virginia, and certifying that ***EQR/Lincoln Limited***

---

[6]As the *Sheets* Court noted, "decision turns on the meaning of the removal statute and not upon the characterization of the suit or the parties to it by state statutes or decisions." 313 U.S. at 140 (citing *Mason City & Ft. Dodge Ry. Co. v. Boynton*, 204 U.S. 570 (1907)). And, as the Supreme Court noted in *Carden v. Arkoma Assocs.*, "the nature of the named party does not settle the question of who are the real parties to the controversy" for jurisdictional purposes. 494 U.S. 185, 204 (1990) (citing *Navarro*, 446 U.S. at 464-66).

[7]Plaintiffs also contended that Lincoln misrepresented its state of citizenship in the Notice of Removal.

[8]Other than the district court's own analysis, the court cited no contrary evidence offered by Defendants.

> *Partnership is an authorized and registered "partnership" in Virginia*; and
>
> (5) the Fairfax County Tax Assessment Office records demonstrating that *Jeff Franzen is a resident of Fairfax County, Virginia*.

J.A. at 1974 (emphasis added).

If diversity jurisdiction is challenged, the burden of proof remains on the party invoking federal court jurisdiction, and the citizenship of each real party in interest must be established by a preponderance of the evidence. *Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974); *Janzen v. Goos*, 302 F.2d 421 (8th Cir. 1962). If this burden is not met, the federal court must dismiss the action. *Kenrose Mfg. Co. v. Fred Whitaker Co.*, 512 F.2d 890 (4th Cir. 1972); *see also* Fed. R. Civ. P. 12(h)(3). A party's mere allegation of diversity cannot satisfy its burden of establishing the district court's jurisdiction. "In a properly pleaded diversity action between corporations the plaintiff will not only allege that there is diversity of citizenship, but will also advert to the factors set out by § 1332(c) that establish corporate citizenship." *District of Columbia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1043-44 (D.C. Cir. 1986)). The court must then examine those factors and the facts in the record and determine whether diversity exists.[9] When jurisdiction is challenged, courts generally do not accept the *carte blanche* naked allegations of diverse citizenship or

---

[9]"To determine whether a party has adequately presented facts sufficient to establish federal diversity jurisdiction, appellate courts must look to the face of the complaint, ignoring mere conclusory allegations of jurisdiction." *Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citations omitted). Because federal courts are courts of limited jurisdiction, there is a presumption against its existence, and the party invoking federal jurisdiction bears the burden of proof when diversity is challenged. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *see also Whitelock v. Leatherman*, 460 F.2d 507, 514-15 (10th Cir. 1972) (allegations of mere residence may not be equated with citizenship for the purposes of establishing diversity and where the pleadings are found wanting, an appellate court may review the record for evidence that diversity exists).

bald assertions of jurisdictional facts. *See*, *e.g.*, *Coburg*, Slip Op. at 4, (requiring Plaintiff to state a substantial federal claim and declining to base jurisdiction upon an allegation that his employer violated "his constitutional rights"); *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, (4th Cir. 1998) (declining to accept conclusory allegations of residence as prima facie proof of citizenship for diversity purposes and collecting cases on similar points); *cf. Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1029 (6th Cir. 1968) ("Jurisdiction is not conferred on a federal court in a non-diversity case by mere conclusory allegations that one's constitutional or civil rights have been violated."); *Powder Power Tool Corp. v. Powder Actuated Tool Co.*, 230 F.2d 409, 414 (7th Cir. 1956) ("The rule is firmly settled that the mere allegation of the jurisdictional amount when challenged as it was here is not sufficient and that the burden is upon the plaintiff to substantiate its allegation." (citation omitted)). Indeed, "[w]here the pleadings are found wanting, an appellate court may also review the record for evidence that diversity does exist." *Penteco*, 929 F.2d at 1521 (citing *Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 382 (1904)); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936); *F & S Constr. Co. v. Jensen*, 337 F.2d 160 (10th Cir. 1964); *Buell v. Sears, Roebuck & Co.*, 321 F.2d 468 (10th Cir. 1963).

The district court, however, denied the Roches' motion for remand, concluding that Lincoln Property Company was a citizen of Texas based upon its incorporation and principal place of business there. J.A. at 1974. The court also concluded that "Lincoln Property Company is not a citizen of Virginia since the company is not registered to conduct business in Virginia." *Id.* The court did not determine the citizenship of the real parties in interest. The court did recognize, however, that "Lincoln operates under many different structures and that [Jeff Franzen, a Virginia citizen,] is a ***partner*** in new deals." *Id.* (emphasis added). And, while acknowledging that Lincoln's "corporate website" designates Jeff Franzen as a "partner" but "does not specify the partnership to whom Mr. Franzen belongs," the court concluded that "this evidence fails to demonstrate that Mr. Franzen was a partner in either Defendant Lincoln or its subsidiary EQR." J.A. at 1975. The burden of demonstrating diversity, however, is not on the Roches; the burden is on Lincoln. *Burden*, 60 F.3d at 216. Thus, the district court erred by weighing the evidence in favor of Lincoln.

By its own admission, Lincoln operates under many different structures and Jeff Franzen and Fred E. Chaney are both "partner[s]" of some Lincoln entity related to this action. J.A. at 1601, 1605-06. Indeed, Lincoln's 30(b)(6) deponent, in his deposition as spokesperson for Lincoln, indicated that "we're a partnership" with "multiple structures that we operate under." And, Jeff Franzen is a Lincoln "partner" and a resident of Virginia.[10] Only after Lincoln's 30(b)(6) deponent testified that Franzen was a "Senior Vice President/Partner" did Franzen file a self-serving affidavit contending that he is "referred to as a 'Partner' because [he is] a partner in several Texas limited partnerships that are involved in the acquisition and development of properties." J.A. at 1608. Curiously, he never identifies those other limited partnerships, nor is there any evidence as to how they are distinct or uninvolved in Lincoln's Virginia business enterprises and many Virginia property holdings, nor does Franzen identify any of his partners.

Nonetheless, at oral argument and in its briefs, Lincoln admitted that "the entity that receives the management fees for Westfield Village Apartments" is "EQR/Lincoln Limited Partnership." J.A. at 1531. Lincoln also concedes that the citizenship of a limited partnership is determined by reference to *all* of its partners. *See* J.A. at 1556 (citing *Camden*, 494 U.S. at 192-93). But, Lincoln fails to carry its burden of demonstrating that each of its partners are not Virginia citizens. In its casual attempt to demonstrate diversity, Lincoln discloses the names of only two "general partners" in EQR/Lincoln Limited Partnership: (1) Lincoln Management Corporation, a Texas Corporation with its principal place of business in Dallas, Texas; and (2) Lincoln Placeholder Limited Partnership, which is allegedly "a Texas partnership." *See, e.g.*, J.A. at 1562, 1574.

---

[10]John LeBeau, who is an executive officer of Lincoln, testified that Jeff Franzen is the "highest ranking officer" in Lincoln's Herndon Virginia regional office and that he is "Senior Vice President, *partner*." J.A. at 1606 (emphasis added). When pressed farther, LeBeau could not (or would not) identify precisely the entity of which Jeff Franzen was a "partner." Indeed when asked whether "[h]e is a partner in Lincoln Property Company," LeBeau responded, "I don't know what he is a partner of." *Id.* In light of Lincoln's burden of establishing diversity, this ambiguity—created by Lincoln—surely cannot be resolved in favor of finding diversity.

Nowhere in its brief, its declarations of its general counsel, nor in the various foreign state corporation records appended to the record, has Lincoln disclosed the identity of any of its *limited partners*. Indeed, the Certificate of Limited Partnership certified by the Delaware Secretary of State discloses only the name of EQR/Lincoln Limited Partnership's "general partners," to wit: Lincoln Eastern Management Corporation and Lincoln Placeholder Limited Partnership. J.A. at 1574. As, Lincoln no doubt concedes, however, the citizenship of a limited partnership is determined by the citizenship of *all* of its partners, *both limited and general*. J.A. at 1556 (D.C. Op.) (citing *Camden*, 494 U.S. at 192-93). And, a limited partnership has, at minimum, one or more general partners *and one or more limited partners*. *See*, *e.g.*, *Newport Ltd. v. Sears, Roebuck and Co.*, 941 F.2d 302, 306 n.6 (5th Cir. 1991) (discussing modern partnership codes and citing Tex. Rev. Civ. Stat. Ann. art. 6132a-1 (limited partnerships have one or more general partner and one or more limited partner)); 6 Del. Cd. § 17-101(9) (defining a "limited partnership" as "a partnership formed by 2 or more persons under the laws of the State of Delaware and having 1 or more general partners and 1 or more limited partners"). The partnership filings in the record, however, do not disclose the identity or citizenship of *any* of EQR/Lincoln Limited Partnership's limited partners.[11] Thus, we can not know whether any of them is a Virginia citizen.

---

[11]Lincoln's business structure is quite confusing, and nowhere in the record documents pertaining to this issue did we find the names of the limited partners in any of these limited partnerships. For example, the original certificate of limited partnership for EQR/Lincoln Limited Partnership was filed November 13, 1997, designating both Lincoln Eastern Management Corp. and Lincoln Placeholder Limited Partnership as "general partner[s]." J.A. 1573-74. No limited partners were disclosed. That certificate was later corrected on November 19, 1997, only to state that "the sole General Partner is Lincoln Eastern Management Corporation, a Texas corporation. . . ." J.A. at 1575. The Limited Partnership Agreement, effective November 13, 1997, however, designates Lincoln Eastern Management Corporation as both general and limited partner of EQR/Lincoln Limited Partnership. J.A. 1576-77. However, a limited partner generally may not be a general partner. *See, e.g.*, *Unger v. C.I.R.*, 936 F.2d 1316, 1318 (D.C. Cir. 1991) (noting that general partners are managers of partnership and that "a limited partner may not participate

Ultimately, therefore, given the affirmative evidence in the record (that Jeff Franzen, a Virginian, is a Lincoln "partner" and that Lincoln has a "partnership" that is "authorized and registered in Virginia"), and the lack of sufficient evidence to the contrary, we cannot say that Lincoln has met its burden of establishing diversity.[12] Indeed, the fur-

---

in the active management of the enterprise"); *Magneson v. C.I.R.*, 753 F.2d 1490, 1498 (9th Cir. 1985) ("limited partner may not actively participate in running the business" as a general partner). And, Lincoln Placeholder Limited Partnership's general partner is Lincoln Eastern Management Corporation and its limited partner is Lincoln E.C.W. Property Management, Inc. J.A. at 1591.

[12]Another reason jurisdiction may be lacking stems from the Roches' conversion claim. In their original state complaint, Supp. J.A. at 63, and in their amended federal complaints, J.A. at 198-199, the Roches contend that their personal property was "dispossess[ed,]" without their consent, "destroy[ed]," "wrongfully withheld," "converted," and "lost or stolen." Thus, the Roches contend, as was made clear at oral argument, that Lincoln and Barco (the Virginia environmental company hired by Lincoln to perform mold remediation) were "bailees" of their property. In its defense, Lincoln contended at oral argument that Barco, not Lincoln, was the bailee and that, under a bailment theory, Lincoln could not be liable for conversion of the Roches' property because their property was bailed only to Barco. Indeed, it was Lincoln's position that SWIB and Barco are the real parties in interest with respect to the conversion claim. And, as Wright and Miller have noted: "As a result of looking at the citizenship of the real party in interest and because of express reference to them in the second sentence of Rule 17(a) [requiring cases to be litigated in name of real parties in interest, including executors, administrators, bailees, *etc*.], federal courts have held that the citizenship of an executor, administrator, guardian, **bailee**, or trustee is determinative in measuring the court's jurisdiction." Wright & Miller, 6A Fed. Pract. & P. Civ. 2d § 1556 at 422-23 (emphasis added) (citing, with regard to bailees, *Bradley v. St. Louis Terminal Warehouse Co.*, 189 F.2d 818 (8th Cir. 1951)); *see also Kidwell ex rel. Penfold v. Meikle*, 597 F.2d 1273, 1287 (9th Cir. 1979) (finding no jurisdiction under any basis because Rule 17(a) requires cases to be litigated in name of real party in interest, who was not joined or did not consent to litigation); *cf. Certain Interested Underwriters at Lloyd's, London*, 26 F.3d 39, 43 n.1 (6th Cir. 1994) (noting that Supreme Court observed in *Navarro*, *supra*, that "Rule 17(a) frequently overlaps with the jurisdictional rule that diversity jurisdiction

ther we look the more dubious the diversity of citizenship inquiry becomes. In this case, the citizenship of the real parties in interest escapes us because of the confusing structure of the Lincoln group of enterprises; but mostly, Lincoln's failure to disclose all of the necessary jurisdictional facts. The negative inferences resulting from these obscurities, however, must be borne by Lincoln, who created them, not the Roches and not the federal courts.[13]

## IV.

The present controversy is a classic landlord-tenant dispute, which most often is litigated in state court and is far less often the proper subject of federal jurisdiction. Indeed, we have been reluctant to get involved in local disputes over land and property. *Cf. Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 828-29 (4th Cir. 1995) ("Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of federal courts . . . . Accordingly, federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes."). There is ample record evidence that the property at issue is located in Virginia, the mold abatement services contracted for were performed in Virginia by a Virginia company, Lincoln maintains several rental properties in Virginia other than the one at issue here, Lincoln has a regional office in Virginia,[14] and all of the correspondence and communication

_____

depends on the citizenship of the real parties to the controversy, but 'the two rules serve different purposes and need not produce identical outcomes in all cases.'" (citation omitted)). We shall nonetheless defer further consideration of this concern, seeing that the more crucial dispute concerns the citizenship of Lincoln and its relevant enterprises.

[13]An additional reason for employing the real party in interest test when construing the diversity statute is, aside from federalism, is "to avoid burdening the federal court system with cases that do not present a federal question or a threat of prejudice. . . ." Wright & Miller, 6A Fed. Pract. & P. § 1556 at 422.

[14]Most of the communications between the Roches and Lincoln were directed to and received by Lincoln Property Company at "115 Herndon Parkway, Suite 100 Herndon, VA 20170" and responses from Lincoln were sent from "Westfield Village Apts. 5115 Woodmere Dr. #103, Centreville, VA 20120." J.A. at 670-686.

related to this controversy occurred in Virginia. *See* J.A. at 669-691. Moreover, Lincoln's Texas office is rarely, if at all, referenced in the record. *See*, *e.g.*, *id.* All of this militates in favor of finding that the real and substantial party in interest is the Lincoln entity (partnership or not); probably, EQR/Lincoln Limited Partnership, which "is an authorized and registered partnership *in Virginia*." J.A. at 1974 (emphasis added).

The obvious and elementary policy behind diversity jurisdiction is that an out-of-state defendant should be entitled to a federal forum if he decides that he cannot receive a fair trial in a state court due to local prejudice. *Asher v. Pacific Power & Light Co.*, 249 F. Supp. 671, 674 (N.D. Cal. 1965). As the Court of Appeals for the Third Circuit recognized in *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494 (3d Cir. 1997), the purpose of diversity jurisdiction is to provide a tribunal free from local prejudice. *See id.* at 499. Thus, the *Dresser* Court reasoned:

> If diversity jurisdiction exists because of a fear that the state tribunal would be prejudiced towards the out-of-state plaintiff or defendant, that concern is understandably allayed when that party is joined with a citizen from the forum state. Indeed, when members from the forum state are present on both sides of the controversy, it becomes more difficult to imagine that a state tribunal would favor one side based upon biases in favor of its own citizens.

*Id.* at 499 (citations omitted).

In this case, the concerns upon which diversity jurisdiction are founded are easily allayed. Even though the nominal party and ultimate parent company, Lincoln Property Company, is a Texas citizen, it is certainly not an alien to Virginia. From the record, it appears that the real and substantial party in interest is the Virginia subsidiary, be it a partnership, corporation or otherwise, rather than the Texas parent. Moreover, the real party in interest owns land and operates a substantial part of its business in Virginia, thus establishing a very close nexus with the Commonwealth, which is much stronger than any nexus to Texas made apparent by the record.[15] Thus, to be accurate,

---

[15]We also note that, although the Roches sued the Texas parent company, they effected service of process upon Lincoln's registered agent in Virginia.

both the Texas parent and the Virginia sub-"partnership" should be parties to the instant action.[16] Whether both are joined, or the action is maintained against the Virginia real party(ies) in interest, complete diversity would not exist and the case should be remanded. *See* 28 U.S.C. § 1447(e).[17] In any event, the citizenship of the nominal parties listed on the Complaint is in no way dispositive of a subject matter jurisdiction challenge. Because the parties may not waive or consent to federal subject matter jurisdiction—indeed we must raise it *sua sponte* if jurisdiction appears questionable—the nominal parties cannot provide a valid basis for finding jurisdiction. *See State v. Ivory*, 906 F.2d 999, 1001 n.2 (4th Cir. 1990) (noting that subject matter jurisdiction may not be waived and we have authority to raise the matter, even *sua sponte*).

Neither in the removal petition nor in the record is there sufficient indicia—by a preponderance of the evidence—that one member of the Lincoln group of companies doing business in Virginia is not a citizen of the Commonwealth. Seeking removal, Lincoln had the burden of establishing diversity. *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986). As the burden has not been met, federal jurisdiction does not exist. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *see also Ivory*, 906 F.2d at 1001 (noting that "we may properly consider on appeal whether jurisdiction exist[ed] at the time of judgment" and concluding it did not exist) (internal quotation

---

[16]Given the manner in which Lincoln conducts business (using many different structures) and the confusion which is created thereby, it is not surprising that Plaintiffs named the parent company *ab initio* rather than engaging in a confounding wild goose chase—it has even confused this Court—to determine the real party in interest.

[17]28 U.S.C. § 1447(e) provides the district court with two options: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Since joinder of the "real party in interest" would be required under Rule 17(a), the district court's options would likely be limited to remand; the court does retain some discretion, though. We have held that: "These are the only two options for a district court faced with a post-removal attempt to join a nondiverse defendant; the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999).

marks omitted) (citing *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702 (1972); *Rockwell Int'l Credit Corp. v. U.S. Aircraft Ins. Group*, 823 F.2d 302, 304 (9th Cir. 1987) (burden on party seeking federal jurisdiction to establish diversity of real parties in interest); *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 183 (2d Cir. 1966) (addressing subject matter jurisdiction, even though defendant did not seek leave to appeal district court's denial of its motion to dismiss on the ground that plaintiff and limited partner of defendant general partnership were not diverse).

V.

At the end of the day, the burden of establishing diversity remained upon Lincoln. And, Lincoln failed to carry its burden. Thus, we are left only to conclude that our lack of confidence in the allegedly diverse citizenship of Lincoln's real party in interest precludes our jurisdiction. 28 U.S.C. § 1331(a). If this were a different case, where Defendants merely inadvertently failed to present evidence of diversity, we might be sympathetic and consider remanding this case back to the district court for further proceedings so as to allow Defendants an opportunity to cure their inadvertence. *See, e.g.*, *Clephas v. Fagelson, Shonberger, Payne & Arthur*, 719 F.2d 92, 94 (4th Cir. 1983) (noting that "it was a mere inadvertence that led the plaintiff to omit allegation and proof" of diversity and that "provided that we were persuaded that the plaintiff's case had merit, would view sympathetically a motion to enter an order remanding this case to the district court to permit the plaintiff belatedly to allege and prove such diversity of citizenship"). The issue of diversity jurisdiction, however, was extensively litigated below. Thus, this case is not one of inadvertence and we, therefore, would not be sympathetic to a motion of the kind discussed in *Clephas*, *supra*.

Consequently, the present record is insufficient to sustain the jurisdiction of the court below or the jurisdiction of this court except for the application of jurisdictional limitations. Finding that we lack subject matter jurisdiction, we can not address the merits of the case. Rather, we reverse the judgment of the district court on the issue of subject matter jurisdiction, we vacate the remainder of the court's judgment, and we remand the case back to the district court with

instructions to remand the case to the Virginia Circuit Court for Fair-fax County.

*REVERSED IN PART, VACATED IN PART,*
*AND REMANDED*